IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL HARDY,

        Petitioner,

v.                                  CIVIL ACTION NO. 2:13-cv-07419
                                     (Criminal No. 2:10-cr-00048-2)

UNITED STATES OF AMERICA,

        Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner Michael Hardy's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Section 2255 Motion"). (ECF No. 178.) Also before the Court are Petitioner's Motion for Judgment, (ECF No. 220), and Motion to Amend, (ECF No. 229). On May 1, 2013, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and recommendations for disposition ("PF&R"). Magistrate Judge Tinsley filed his PF&R on August 3, 2016, recommending that this Court deny Petitioner's Section 2255 Motion and dismiss this action with prejudice. (ECF No. 262.) Petitioner filed objections to the PF&R on September 15, 2016 (the "Objections") which were made timely pursuant to an extension previously granted by the Court. (ECF No. 267).

For the reasons that follow, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** the Objections, (*id.*), **ADOPTS** the PF&R to the extent it is consistent with this

Memorandum Opinion and Order, (ECF No. 262), **DENIES** Petitioner's Section 2255 Motion (ECF No. 178), Motion for Judgment (ECF No. 220), and Motion to Amend (ECF No. 229), **DISMISSES** this case, and **DIRECTS** the Clerk to remove this matter from the Court's docket.

## I. BACKGROUND

The PF&R sets forth a comprehensive summary of the background of this case, which the Court revisits only as necessary to resolve the Objections. On two separate occasions in December 2009, Petitioner Michael Hardy facilitated the sale of one ounce of cocaine base to a confidential informant ("CI") working on behalf of the Metropolitan Drug Enforcement Network Team in Kanawha County, West Virginia. The Petitioner was later charged by two-count Superseding Indictment with aiding and abetting the distribution of five grams or more of crack cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (2006). (ECF No. 25.) Petitioner proceeded to trial and was convicted on both counts. On October 20, 2011, Petitioner appeared before this Court for sentencing as well as for a revocation hearing for violations of a formerly-imposed period of supervised release, the terms of which Petitioner was alleged to have violated when he was convicted of the aiding and abetting offenses. Petitioner admitted to this and other alleged violations of supervised release, and was sentenced to a consecutive term of 24 months. The Court imposed a sentence of 144 months for the new offenses.

Petitioner appealed this Court's judgment, alleging insufficiency of the evidence and ineffective assistance of counsel. Later, but before the Fourth Circuit issued its decision, Petitioner obtained permission to file a supplemental pro se brief alleging prosecutorial misconduct vis-à-vis the misrepresentation of a recorded telephone conversation introduced at trial, constructive amendment of the indictment, and the effective denial of discovery evidence. The

Fourth Circuit considered these supplementary arguments, together with those originally presented on appeal, but found no reversible error and affirmed. *United States v. Michael Hardy*, 498 Fed. App'x 191 (4th Cir. Oct. 15, 2012). As is its practice, the Fourth Circuit declined to consider the ineffective assistance of counsel claim because trial counsel's ineffectiveness was not conclusively established by the appellate record.

Petitioner filed the instant § 2255 Motion on April 8, 2013. Therein, he reasserts the arguments presented to the Fourth Circuit on direct appeal, including those matters presented by way of his supplemental brief. The United States filed a response on May 23, 2014, and Petitioner later filed a reply. On July 13, 2015, Petitioner filed a letter-form motion to amend for the purpose of asserting a new claim for miscalculation of his criminal history category under the United States Sentencing Guidelines. The Magistrate Judge appointed counsel to represent Petitioner and held an evidentiary hearing on Petitioner's ineffective assistance of counsel claims on June 16, 2016. The issuance of the PF&R followed.

## II.   PF&R AND OBJECTIONS

The Magistrate Judge's recommendation that the § 2255 Motion be denied is based on three main findings: first, that Petitioner's criminal history claim is untimely and otherwise without merit; second, that Petitioner's claims centered on certain missteps by the Government, including prosecutorial misconduct, constructive amendment of the Indictment, and failure to disclose *Brady* material, were addressed on appeal and are barred from collateral review; and third, that the ineffective assistance of counsel claim is without merit.

To elaborate on the first of these findings, the Magistrate Judge found that the criminal history claim should be dismissed as untimely because it was filed well outside of the one-year

3

statute of limitations applicable to habeas petitions and does not meet the requirements for relation back under Rule 15(c) of the Federal Rules of Civil Procedure. In any event, the Magistrate Judge continued, the substance of Petitioner's criminal history claim is without merit. Petitioner alleged in support of his criminal history claim that he incorrectly received two criminal history points, rather than one, for two prior misdemeanor sentences which resulted from offenses contained in the same charging document and were imposed on the same day. The Magistrate Judge agreed that these convictions were treated as one sentence under the Guidelines, *see* U.S.S.G. § 4A1.2(a)(2), but since they resulted in a sentence of imprisonment of at least sixty days, two points were appropriate. U.S.S.G. § 4A1.1(b).

On Petitioner's prosecutorial misconduct, constructive amendment, and *Brady* claims, the Magistrate Judge found these claims were each considered on direct appeal and cannot be relitigated in a collateral proceeding. In the alternative, and in recognition of the possibility that Petitioner's arguments could be construed as constitutional claims not specifically included within the scope of the direct appeal, the Magistrate Judge reasoned that Petitioner had not raised a claim of actual innocence so as to avoid the procedural bar. By admitting to the acts for which he was convicted during his revocation hearing, the Magistrate Judge found that Petitioner fatally undermined any claim of actual innocence.

Petitioner begins his Objections by "reassert[ing] "all facts and arguments contained in his prior filings related to his § 2255 petition." (ECF No. 267 at 1.) He goes on to identify three so-called "specific objections" directed to particular recommendations in the PF&R. Petitioner argues first that his admission to the supervised release violation should not be construed as a waiver of any actual innocence claim because Petitioner's admission was only to the fact of

4

conviction, not to his culpability in the offense. Next, and as to the Magistrate Judge's analysis of the criminal history claim, Petitioner notes that the Magistrate Judge cited the incorrect provision of the United States Sentencing Guidelines but does not otherwise object to the Magistrate Judge's findings. Third, Petitioner offers a rather cursory objection to the Magistrate Judge's recommendations on the ineffective assistance claim. He argues summarily that "the credible testimony provided by him under oath at the hearing clearly establishes that his counsel rendered ineffective assistance, even under the strong presumption outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at 3.)

For the following reasons, the Court **SUSTAINS** the Objections only insofar as they direct the Court to a minor citation error in the PF&R and challenge the significance the Magistrate Judge placed on the admitted supervised release violation. In all other respects, the Objections are **OVERRULED**.

### III. LEGAL STANDARD

The Court is required to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge "when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). When a party does make objections, but the objections are so general or conclusory that they fail to direct the Court to any specific error by the magistrate judge, de novo review is unnecessary. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Vague objections to the magistrate judge's findings prevent the district court from focusing on disputed issues and thus render the initial referral to the magistrate judge useless. *Howard's Yellow Cabs,*

5

*Inc.*, 987 F. Supp. 469, 474 (W.D.N.C. 1997). Failure to file a specific objection thus constitutes a waiver of the right to de novo review. *Id.* (citing *Mercado v. Perez Vega*, 853 F. Supp. 42, 44 (D.P.R. 1993)); *see generally* 28 U.S.C. § 636(b)(1).

## IV. DISCUSSION

The Court proceeds with its analysis of Petitioner's Objections, turning first to the objection reasserting the entire case and then to the objections directed more pointedly to the Magistrate Judge's findings.

### A. *General Objection*

Not all of Petitioner's objections warrant de novo review. Petitioner's first objection—that he "re-asserts all facts and arguments" contained in the § 2255 Motion—fails to direct the Court to any specific error in the PF&R and, to that extent, is not an "objection" at all. *See* 28 U.S.C. § 636(b)(1). De novo review of "general and conclusory" objections like this one is both unwarranted and unnecessary. *Howard's Yellow Cabs*, 987 F. Supp. at 474. Consideration of this objection would undermine the purposes of referral, *see id.*, and the Court thus declines to address it further.

This leaves the three ostensible "specific" objections to the PF&R, the first of which goes to the Magistrate Judge's decision to disregard Petitioner's actual innocence claim because Petitioner admitted the offense of conviction insofar as it constituted violations of supervised release.

### B. *Admission to Violation of Supervised Release*

Petitioner argues that his admission to the supervised release violation was not an admission of guilt, but merely an admission to the fact that he had been convicted of the two aiding

6

and abetting offenses charged in the indictment. The revocation petition supports Petitioner's point. By amended petition filed January 25, 2011, Petitioner's probation officer alleged:

> On November 10, 2010, the defendant was convicted by jury verdict in the Southern Cistrict of West Virginia for two violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, aiding and abetting the distribution of 5 grams or more of cocaine base. The defendant is scheduled for sentencing before the Honorable Thomas E. Johnston on February 15, 2011.

(*United States v. Hardy*, Crim. Action No. 2:04-cr-00003, ECF No. 71.) As this violation alleges only that Petitioner was convicted of the substantive offenses, the Court will find that Petitioner did not concede guilt by admitting that he was charged with and later convicted of these crimes.[1]

Nevertheless, Petitioner's objection is ultimately a red herring. The Magistrate Judge's central finding on Petitioner's prosecutorial misconduct, constructive amendment, and *Brady* claims was that these claims are not cognizable in federal habeas because they had already been addressed on direct appeal. The procedural default issue to which Petitioner's objection is related

---

[1] The sentencing hearing transcript supports this conclusion and reveals that Petitioner made a strategic decision to admit to the supervised release violation despite his intent to appeal his aiding and abetting convictions. There, the Court asked the following questions regarding Petitioner's decision to admit the relevant supervised release violation and received the following answers:

> THE COURT: And, Mr. Hardy, do you understand that if I determine that you have violated the terms and conditions of your supervised release under the United States Sentencing Guidelines, I may revoke, extend or modify your term of supervised release?
> THE DEFENDANT: Yes, sir.
> THE COURT: And do you admit or deny the allegations contained in the petition?
> THE DEFENDANT: No, sir. I admit.
> THE COURT: All right. Now I had some indication, Mr. Hively, before the hearing that perhaps for appeal purposes the defendant would stand silent on violation number 1. Do we need to clarify the record on that or is he admitting violation number 1?
> MR. HIVELY: Your Honor, after discussion with Mr. Hardy, he is willing to admit to number 1.
> THE COURT: All right. Very well.

(Sentencing Hr'g. Tr. at 6–7, ECF No. 172.) Based on the wording of the violation, Petitioner and his counsel appear to have determined that an admission to the fact of conviction was not an admission to guilt.

only became relevant when the Magistrate Judge recognized the remote possibility that Petitioner had alleged constitutional claims that had not been raised on direct appeal.

As noted by the Magistrate Judge, arguments previously raised on direct appeal generally may not be recast "under the guise of collateral attack." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *see United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) ("[A]bsent 'any change in the law,' defendants 'cannot relitigate' previously decided issues in a § 2255 motion." (quoting *United States v. Roane*, 378 F.3d 382, 396 n. 7 (4th Cir. 2004)). In reviewing the Magistrate Judge's finding in this regard, a brief discussion of the substance of Petitioner's claims is warranted. Petitioner's pro se supplemental appellate brief directed the Fourth Circuit to what he called the "misrepresentation of key evidence presented against me at trial." (ECF No. 244-1 at 1.) The key evidence to which Petitioner alluded was an audio recording of a telephone conversation between Petitioner and the CI arranging a purchase of crack cocaine. The Government represented at trial that the audio recording, introduced as Government's Exhibit 4, memorialized a conversation that occurred on December 2, 2009 and was proof of the aiding and abetting offense charged in the Superseding Indictment. (*See* Trial Tr. Day 2 at 35–36, ECF No. 171.)

In his supplemental brief, Petitioner alleged that the conversation heard in the recording did not, in fact, occur on December 2, 2009, but instead took place on November 20, 2009 and did not lead to a completed drug transaction. (ECF No. 244-1 at 2.) Petitioner further argued that there were material differences in the terms of the two transactions because the November 20, 2009 recording involved the attempted purchase of only a one-half ounce of crack cocaine, rather than the one-ounce quantity sold on December 2, 2009. Assuming the truth of these allegations,

8

Petitioner asked the Fourth Circuit to find that the Government's misrepresentation of this evidence constituted a constructive amendment of the indictment. He also alleged somewhat vaguely that the Government's failure to timely produce Exhibit 4 violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963). The Fourth Circuit considered these arguments, albeit in summary fashion, and found them to be nonmeritorious. *Hardy*, 498 Fed. App'x at 192.

In the § 2255 Motion, Petitioner rehashes his arguments with respect to Government's Exhibit 4 almost verbatim. (ECF No. 178 at 1.) Therein, he designates the following as "fundamental issues" for consideration on habeas: the constructive amendment of the indictment, prosecutorial misconduct, and non-disclosure of *Brady* material, all arising from Petitioner's determination that the Government misrepresented the date and circumstances of this particular recorded call.[2] Without pointing to any change in the law that warrants reconsideration of these claims, the Magistrate Judge was correct in concluding that Petitioner cannot relitigate these issues. *Dyess*, 730 F.3d at 360.

Moreover, even assuming Petitioner could raise these claims, they still fail under the facts of this case. Petitioner's assertion that the December 2, 2009 audio recording was altered at trial is simply without merit. The Government authenticated the audio recording during the direct examination of the CI, who confirmed that he had previously listened to the recording and that it

---

[2] Petitioner's pro se supplemental appellate brief, as well as his filing is this § 2255 proceeding, contain other allegations, including but not necessarily limited to, ineffective assistance of counsel. The pro se filings are not easy to discern. However, it is a fair characterization of Petitioner's filings that the prosecutorial misconduct, constructive amendment, and *Brady* allegations relate to Petitioner's concerns about the December 2, 2009 audio recording. Petitioner, who is now represented by counsel, has not asserted otherwise in the Objections. Nor has Petitioner, through counsel, asserted in the Objections that the Magistrate Judge has mischaracterized or failed to address any of Petitioner's claims. Thus, the Court views Petitioner's case at this point through the lens of the PF&R as challenged by the Objections.

accurately reflected the phone conversation he had with Petitioner on December 2, 2009. (Trial Tr. Day 2 at 35–36, ECF No. 171.) The CI indicated that he placed his initials on the CD of the recording after listening to it prior to trial, and identified his initials on the CD presented at trial as Government's Exhibit 4-A. (*Id.* at 35.) He also confirmed the accuracy of the recording transcript produced by the Government. (*Id.*) Petitioner complains that the Government stopped the recording at a crucial moment. (*See id.* at 36.) If the audio had continued, Petitioner alleges, the jury would have heard the caller setting up a transaction for a one-half ounce of cocaine for the purchase price of $700, not a price of $1200 as the CI described. However, it is clear from the transcript that the first evidence of the $1200 purchase price—described as "12" in the recording—came from the recording itself, not from the CI's testimony:

> MR. MCVEY: All right. Go ahead.
> (Recording played in open court.)
> MR. MCVEY: Stop there.
>     By MR. MCVEY:
> Q. What are you discussing there?
> A. The price of the purchase.
> Q. And what's the significance of the "12" there? What does that mean?
> A. It's $1,200. $1,200.00.

(*Id.* at 36.) The Court has also listened to the recording. Although the "12" is not crystal clear, the Court nonetheless finds no evidence that the prosecution misrepresented—or permitted to be misrepresented, through the testimony of its witnesses—the audio recording presented as evidence of the December 2, 2009 transaction. Consequently, because the recorded call at issue related only to the December 2, 2009 drug transaction alleged in the Superseding Indictment, there was no constructive amendment of the criminal charges. Furthermore, as the Government points out in its response to the § 2255 Motion, the recorded telephone calls from November 20, 2009 and December 2, 2009 were turned over in discovery on June 4, 2010, with the transcripts being

10

produced on October 19, 2010. (ECF No. 185-5.) The Government's timely disclosure of both recordings puts to rest Petitioner's *Brady* argument.

In sum, though Petitioner's specific objection to the weight the Magistrate Judge assigned to the admitted supervised release violation is **SUSTAINED**, it is ultimately of no consequence. Because Petitioner's substantive arguments plainly fail on their merits, the Court will disregard the issues relative to procedural default.

### C. *Criminal History Claim*

Petitioner's second objection directs the Court's attention to the Magistrate Judge's analysis of his criminal history claim. In addressing the merits of this claim, the Magistrate Judge discussed the Sentencing Guidelines provision applicable to the calculation of the two misdemeanor convictions listed in Paragraph 40 of Petitioner's Presentence Investigation Report ("PSR"). The Magistrate Judge found that these convictions, although treated as a single sentence, were assigned two criminal history points under § 4A1.1(b)(2). Section 4A1.1(b)(2) does not exist in the Guidelines, and Petitioner points out that the correct reference is § 4A1.1(b). Though Petitioner is right to correct the record, it makes no difference here. Petitioner does not object to the Magistrate Judge's merits analysis[3] or to the Magistrate Judge's preliminary finding that the criminal history claim does not relate back to the original § 2255 Motion. Thus, while the Court sustains the objection as it relates to the citation error, it adopts the Magistrate Judge's ultimate conclusions.

---

[3] The Magistrate Judge was correct on the merits of Petitioner's criminal history claim. Petitioner was sentenced to six months' incarceration for each of the misdemeanor convictions at issue, to be served concurrently. (PSR ¶ 40, ECF No. 155.) Though these convictions were treated as one offense, § 4A1.1(b) provides that two points are added "for each prior sentence of imprisonment of at least sixty days" not otherwise counted by § 4A1.1(a).

11

D.  *Ineffective Assistance of Counsel Claims*

Lastly, Petitioner argues, without pointing the Court to any specific error in the PF&R, that his self-serving testimony offered at the evidentiary hearing established ineffective assistance of trial counsel under the *Strickland* standard. Like Petitioner's first objection, this one is general and conclusory and, as such, will be **OVERRULED**. Nonetheless, the Court will generously attempt to address the matter raised by Petitioner's testimony in the evidentiary hearing, as referenced in the objection, albeit in conclusory fashion.

To establish ineffective assistance of counsel, Petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To satisfy this burden, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This analysis "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). "[C]ounsel's performance will not be deemed deficient except in those relatively rare situations where, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

12

assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citation omitted). To demonstrate prejudice under *Strickland*'s second prong, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In the § 2255 Motion, Petitioner alleges ineffectiveness on the part of his trial counsel, Joshua Sturm, during both the pretrial and trial phases of the criminal case. At the evidentiary hearing, Petitioner, by counsel, identified the following alleged instances of ineffective assistance. With regard to the pretrial phase of the proceeding, Petitioner's ineffectiveness claims relate to the number of visits that Mr. Sturm conducted with Petitioner, the time period within which he forwarded discovery to his client, Mr. Sturm's alleged failure to review that discovery with Petitioner, and Mr. Sturm's "not preparing . . . to call the" witnesses who Petitioner asserts could have provided alibi testimony. (*See* ECF No. 259 at 4.) As for the trial phase, Petitioner alleged ineffectiveness of counsel due to Mr. Sturm's failure to properly cross-examine Government witnesses. (*Id.*) The Magistrate Judge found that Petitioner established neither deficient performance nor resulting prejudice on any of the various ineffective assistance claims.

Again, Petitioner's objection does not point the Court to any specific error in the PF&R and frustrates the Court's review. *Orpiano*, 687 F.2d at 47. Petitioner merely argues in conclusory fashion that the "credible testimony" provided by him under oath at the evidentiary hearing established ineffective assistance.[4] To the extent this can be viewed as an objection to the

---

[4] Petitioner does not make this clear, but it would appear that his objection goes only to the Magistrate Judge's analysis of the pretrial allegations of ineffectiveness because it is only in this area that Petitioner testified and, therefore, where his credibility would be implicated. (*See, e.g.*, Evidentiary Hr'g. Tr. at 10–

13

Magistrate Judge's credibility determination, the Court notes that "[a] magistrate judge's credibility determinations based on live testimony are entitled to deference where they are supported by the record as a whole." *United States v. Boatrite*, --- F. Supp. 3d ---, 2016 WL 698113, at *4 (N.D. W. Va. Feb. 22, 2016) (citing *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)).

The Magistrate Judge's ineffectiveness findings, however, were not premised on a finding that Mr. Sturm was more credible than his former client. In fact, the Magistrate Judge reasoned that with regard to the frequency and nature of pretrial meetings between attorney and client, the "record is more accurate than any present recollection of the defendant or Mr. Sturm." (ECF No. 262 at 30.) Relying on the criminal docket sheet maintained in this case, the Magistrate Judge noted that Mr. Sturm was appointed to represent Petitioner on July 27, 2010, effective *nunc pro tunc* to July 23, 2010. (ECF No. 66.) On August 20, 2010, Mr. Sturm filed a motion to continue the date of the pretrial hearing, stating specifically that he had received his client's file from the previous attorney, spoken with Petitioner, and concluded that the case would "most certainly proceed to trial." (ECF No. 67 at 1.)

The Magistrate Judge's decision not to rely heavily on Mr. Sturm's testimony was sound. To be sure, Mr. Sturm's testimony generally conflicted with Petitioner's when it came to the frequency of pretrial visits and the distribution of discovery materials.[5] But while Mr. Sturm

---

11, 13–14 (setting forth Petitioner's testimony regarding the infrequency of Mr. Sturm's visits in the months leading up to trial).) For example, although Petitioner answered questions at the evidentiary hearing about Mr. Sturm's cross-examination of government witnesses at trial, nowhere in Petitioner's testimony at the evidentiary hearing did Petitioner identify any criticism of Mr. Sturm's cross-examinations.

[5] Petitioner testified that though he was notified by letter of Mr. Sturm's appointment in July of 2010, he did not see Mr. Sturm until the pretrial motions hearing, which he believed occurred sometime in October of 2010. (ECF No. 259 at 11.) Petitioner claimed that he was told by Mr. Sturm at the time that Mr.

testified that it is his general practice to interview potential witnesses, (Evidentiary Hr'g Tr. at 38, ECF No. 259), to meet with the client as often as necessary (*id.* at 48), and to forward discovery immediately to the client upon receipt, (*id.* at 50), he had little specific recollection of whether or to what extent he followed those practices in this case. To his credit, however, and in support of the Magistrate Judge's conclusion, Mr. Sturm affirmatively stated that he met with Petitioner prior to the pretrial motions hearing and that the two discussed the relevant discovery materials. (*Id.* at Both of these points conflicted with Petitioner's testimony.

Moreover, as the Government pointed out at the evidentiary hearing, Mr. Sturm filed two pretrial motions on behalf of his client. (*See* ECF Nos. 74, 75.) Mr. Sturm testified that the subject of one of those motions—Petitioner's former work as a confidential informant—was brought to his attention by Petitioner himself during an attorney-client visit. Petitioner had testified, incorrectly, that a former attorney had filed these pretrial motions and relied on this assertion as proof of Mr. Sturm's ineffectiveness. (Evidentiary Hr'g Tr. at 18–23, ECF No. 259.) The record of pretrial motions filed by Mr. Sturm shows that Petitioner's testimony is not worthy of credence. Instead, these motions suggest that Mr. Sturm had both reviewed the casefile and met with his client prior to the pretrial motions hearing.

The Court must therefore conclude that Petitioner has not demonstrated that his counsel's pretrial performance fell below an objective standard of reasonableness. Seeing no objection, the

---

Sturm did not yet have Petitioner's case file. Petitioner testified that the next time he saw Mr. Sturm was three to four days before trial when Mr. Sturm dropped off some discovery materials and promised to return to the jail over the weekend to discuss them with his client. Petitioner testified that Mr. Sturm never returned, and that he did not see Mr. Sturm again until the morning of trial. (*Id.* at 10–11.)

15

Court also adopts the Magistrate Judge's attendant finding that even assuming Mr. Sturm rendered deficient performance, Petitioner has not demonstrated prejudice.

## V. CONCLUSION

For the foregoing reasons, the Objections are **OVERRULED IN PART** and **SUSTAINED IN PART**. The Objections are **SUSTAINED** only insofar as they correct an inconsequential citation error in the Magistrate Judge's analysis and challenge the significance the Magistrate Judge placed on the admitted supervised release violation; in all other respects, the Objections are **OVERRULED**. The Court further **ADOPTS** the PF&R to the extent consistent with this Memorandum Opinion and Order, **DENIES** the 2255 Motion (ECF No. 178), Motion for Judgment (ECF No. 220) and Motion to Amend (ECF No. 229), and **ORDERS** that this case be **DISMISSED** and removed from the docket of the Court.

The Court has also considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. The Court thus **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 30, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE